IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ERIC CUNNINGHAM, JR.,
By and Through His Father and Next
Friend, ERIC CUNNINGHAM, SR., and
ERIC CUNNINGHAM, JR., Individually                                         PLAINTIFFS

V.                                                          CIVIL ACTION NO. 1:07CV261-B-D

CITY OF WEST POINT, MISSISSIPPI                                             DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court upon the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiff, Eric Cunningham, Jr., brings this action against the City of West Point, Mississippi, pursuant to Title 42 U.S.C. § 1983, alleging that he was wrongfully arrested and charged with capital murder and wrongfully denied bail as the result of an incident which occurred at the home of his girlfriend, Shandra Hogan.

On January 16, 2007, then-17-year-old Cunningham was babysitting Hogan's two children, Cherity, age six, and Jahmad, age fifteen months, while Hogan was visiting relatives. Fifteen-year-old Demonta Cunningham, and eighteen-year-old Rerica Hyatt were also at Hogan's home. Hogan had instructed Cunningham to give Jahmad a bath which he did shortly after Hogan left. As he was bathing Jahmad, the child had a bowel movement. Cunningham stated to the law enforcement officers that he took Jahmad to the bedroom and put him to bed and then returned to the bathroom to clean up. As he was cleaning the bathroom, Jahmad's six-year-old sister, Cherity, came into the bathroom and stated, "Jahmad got a sock in his mouth."

Cunningham stated he then went to the bedroom and unsuccessfully tried to remove the sock which had become lodged in the child's throat.

The two teenagers, Rerica and Demonta, both called for ambulances while Cunningham went to a nearby neighbor who took Cunningham and Jahmad to the hospital. Medical personnel were unable to remove the sock, and Jahmad died from suffocation. Suspicious about the death, these medical personnel contacted the West Point Police Department. The police department interviewed the pathologist, Stephen T. Hayne, M.D., who informed them that the depth at which the sock was found was consistent with homicide.

Three officers were sent to investigate the scene of the incident. They taped an interview with the six-year-old child, Cherity. Two of the officers testified in depositions that Cherity stated in the taped interview that Cunningham was the only person in the room when the sock became lodged in the child's throat. The plaintiff alleges, however, that Cherity told a third party that she had seen the sock in the child's throat and that she had alerted Cunningham that Jahmad "has a sock in his throat."

Jahmad was charged with felony murder, a capital offense, apparently based in part on the officers' observations of extensive bruising on the child's face and the fact that the mother was unable to explain how the bruising came to be on the child. The attending physician also informed the officers that the child's rectum did not look normal and a black hair was found lodged between his penis and scrotum.

City of West Point municipal judge A.M. Edwards denied bail for Cunningham. On February 28, 2007, Cunningham's present counsel filed a Petition for Writ of Habeas Corpus

which was heard by Circuit Judge Lee Howard on March 15, 2007. Judge Howard found probable cause for the arrest but further held that bail should not be denied.

Cunningham made bail and was released. The Grand Jury returned a "No Bill" on April 5, 2007. Cunningham subsequently filed the present case, and the defendant has moved for summary judgment on all claims.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

Analysis

The plaintiffs assert, pursuant to Title 42 U.S.C. § 1983, that the City of West Point failed to train and properly supervise its officers regarding, among other things, probable cause and bail. They assert that this failure to train constitutes gross negligence on the part of the City.

"[M]unicipal liability for failure to train cannot be based on a gross negligence; the more stringent deliberate indifference standard applies." *Tarantino v. Pierce*, 149 F.3d 1174 (5th Cir. 1998). "Usually, a failure to supervise gives rise to section 1983 liability only in those situations in which there is a history of widespread abuse. Then knowledge may be imputed to the supervisory official, and he can be found to have caused the later violation by his failure to prevent it." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982). The City of West Point, as a political subdivision of the State of Mississippi, is not liable under section 1983 for acts which allegedly violate a plaintiff's constitutional rights unless the wrongful acts resulted from a policy or custom "adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Hare v. City of Corinth*, 74 F.3d 633, 649 n.4 (5th Cir. 1996). "[T]he plaintiff must identify a policymaker and show that an official policy is the 'moving force' behind the municipal employee's allegedly unconstitutional act. The objective deliberate indifference standard 'considers not only what the policymaker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the [plaintiff's] rights.'" *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (internal citations omitted) (quoting *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002)). The United States Supreme Court has held that "'deliberate indifference' is a stringent standard of fault, requiring proof that a

4

municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410 (1997). The Court has also held that the inadequacy must be blatantly obvious before a policymaker can be held liable for violation of constitutional rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Further, it is axiomatic that "[t]here must be a pattern or practice of constitutional violations" to support municipal liability under this theory. *Whitfield v. City of Columbus*, 2001 WL 1524364, at *3 (N.D. Miss.). "Proof of random acts or isolated incidents involving city employees is not sufficient to show the existence of a custom or policy upon which municipal liability may be based." *Id.* at *4. "To prove a municipal policy or custom, a plaintiff must show a pattern of similar incidents in which citizens were injured or endangered by the policy in question and such incidents had occurred for so long or so frequently that it could be considered an expected and accepted policy of city employees." *Id.*

In the present case, first, the plaintiff has some difficulty pinpointing a policymaker. The plaintiff cites *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), for the proposition that the actions of a municipal judge may subject a city to liability under section 1984 for alleged civil rights violations, but the Fifth Circuit has distinguished *Pembaur*, holding that the ruling only applies to actions of a municipal judge when the judge acts in an administrative capacity. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). In the present case, the alleged violation of a constitutional right – that is, wrongful denial of bail – clearly resulted from the judge's judicial duties – not from an administrative function. Neither does *Pembaur* apply to the city prosecutor for the City of West Point. The *Pembaur* Court held that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to

5

the action ordered." *Pembaur*, 475 U.S. at 473. "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 482. "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83. In the case *sub judice*, no evidence has been set forth that the city prosecutor had authority to establish policy with regard to bail or that he made any final decision which was then executed. Instead, he made a *recommendation* regarding bail to the municipal judge. The plaintiff has failed to designate an official who fits the criteria outlined by the Supreme Court or the Fifth Circuit.

Second, assuming *arguendo* that the plaintiff could designate a proper policymaking official, the plaintiff has shown no pattern or practice occurring "for so long or so frequently that it could be considered an expected and accepted policy of city employees." *Whitfield*, 2001 WL 1524364, at *4. The plaintiffs have alleged only a single, one-time occurrence.

Specifically addressing the alleged wrongful denial of bail within a federal context, the court finds that "there is no absolute right to release on bail." *Williams v. Farrior*, 626 So. 2d 983, 986 (S.D. Miss. 1986). As to Mississippi state law on the issue, the Mississippi Code provides that municipal judges are empowered to "bind over the accused to the grand jury or to appear before the proper court having jurisdiction to try the same, and to set the amount of bail *or refuse bail* . . . ." Miss. Code Ann. § 21-23-7 (1972) (emphasis added).

The plaintiffs also assert that probable cause did not exist for Cunningham's arrest. "[I]f the facts supporting an arrest are put before an intermediary such as a magistrate or grand jury, the intermediary's decision to issue a warrant or return an indictment breaks the causal chain and

insulates the initiating party." *Comer v. Lindley*, 2008 WL 2704593, at *7 (N.D. Miss.). Cunningham's arrest was based on a facially valid warrant signed by the municipal judge; and, further, the circuit judge determined at the habeas hearing that probable cause existed. In light of these intermediary determinations and being apprised of the facts surrounding the child's death, this court is unpersuaded by the plaintiffs' argument. It is clear that probable cause existed for Cunningham's arrest.

Finally the court turns to the plaintiffs' state law claims. The Mississippi Tort Claims Act provides,

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

It is clear that the employees of the City of West Point were acting within the course and scope of their employment at all times referenced in the complaint. The plaintiffs have directed the court to no evidence that any employee acted in "reckless disregard of the safety and well-being" of Cunningham. For this reason, the plaintiffs' state law claims must fail.

## Conclusion

For the foregoing reasons, the court finds no genuine issue of material fact in this case. The defendant is, therefore, entitled to judgment as a matter of law. A separate order in accord with this opinion shall issue this day.

This, the 29th day of September, 2009.

                                                       */s/ Neal Biggers*
                                                      **NEAL B. BIGGERS, JR.**
                                                      **SENIOR U.S. DISTRICT JUDGE**